IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DORIS JEAN WILLIAMS o/b/o ) <br> A.S.J, ) <br> ) <br>     Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> JO ANNE B. BARNHART ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br>     Defendant. ) | CIVIL ACTION NO. 2:05cv809-CSC <br> (WO) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Doris Jean Williams filed an application for supplemental security income benefits under Title XVI on behalf of her son, A.S.J., (hereinafter referred to as "A.S.J." or "claimant"). A.S.J. was found disabled on May 26, 1998, with an onset date of March 1, 1998, due to developmental delays and organic mental disorders. (R. 24 & 27). Upon subsequent periodic review of his medical condition, the Commissioner determined that A.S.J.'s disability ceased as of February 2003, and, therefore, his entitlement to disability benefits ceased in April 2003. (R. 34)

The plaintiff filed this action to review the final judgment by Defendant Jo Anne B. Barnhart, Commissioner of Social Security, in which she determined that A.S.J. has experienced medical improvement, is no longer "disabled" and, therefore, is not entitled to supplemental security income benefits. A.S.J.'s request for reconsideration was denied at

the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ determined that A.S.J. was no longer under a disability as defined in the Social Security Act.[1] That opinion became the final opinion of the Commissioner when the Appeals Council denied a request for review. This lawsuit followed. The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[2] The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II. STANDARD OF REVIEW

In 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining child disability under the Social Security Act. *See* Pub. L. No. 104-193, 110 Stat. 2105, 2188 (1996). The revised statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] Title 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.

2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.

3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In reviewing the Commissioner's decision, the court asks only whether her findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

The sections of the PRWORA relating to reconsideration and cessation of SSI benefits for persons under the age of 18 are as follows:

(4) A recipient of benefits based on disability under this subchapter may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided

    has ceased, does not exist, or is not disabling only if such finding is supported by –

        . . .

        (B) in the case of an individual who is under the age of 18 –

            (i) substantial evidence which demonstrates that there has been medical improvement in the individual's impairment or combination of impairments, and that such impairment or combination of impairments no longer results in marked and severe functional limitations; or

            (i) substantial evidence which demonstrates that, as determined on the basis of new or improved diagnostic techniques or evaluations, the individual's impairment or combination of impairments, is not as disabling as it was considered to be at the time of the most recent prior decision that the individual was under a disability or continued to be under a disability, and such impairment or combination of impairments does not result in marked and severe functional limitations; or

        (C) in the case of any individual, substantial evidence (which may be evidence on the record at the time any prior determination of the entitlement to benefits based on disability was made, or newly obtained evidence which relates to that determination) which demonstrates that a prior determination was in error.

42 U.S.C. § 1382c(a)(4)(B).

    Under the plain language of the statute, an ALJ may consider whether medical improvement has taken place; however, the ALJ is not limited to a medical improvement analysis. The statute provides alternative approaches which do not require a determination

that there has been medical improvement.  *See* 42 U.S.C. § 1382c(a)(4)(B)(ii) (new or improved diagnostic techniques or evaluations) and 42 U.S.C. § 1382c(a)(4)(B)(iii) (prior determination in error based on new or prior evidence).  Perhaps more importantly, the statute commands that

> Any determination under this paragraph shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Commissioner of Social Security. Any determination made under this paragraph shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. § 1382c(a)(4)(B).

The Commissioner has also issued a Social Security Ruling ("SSR") "to explain [her] policies for determining continuing disability at step 2 of the medical improvement review standard (MIRS) sequential evaluation process for children under 20 C.F.R. 416.994a(b)(2) and to explain how we apply the functional equivalence at step 2."  *See* Social Security Ruling 05-03p.  SSR 05-03p explains the three-step analysis as follows.

> 1.  At step 1, we determine whether there has been medical improvement in the impairment(s) that was present at the time of the most recent favorable determination or decision. (20 CFR 416.994a(b)(1)).  We refer to the most recent favorable determination or decision as the "comparison point decision" (CPD), and we refer to the impairment(s) that was present at the time of the most recent favorable determination or decision as the "CPD impairment(s)." . . . If there has been medical improvement, we proceed to step 2.

> 2. At step 2, we determine whether the CPD impairment(s) still meets or medically or functionally equals "the severity of the listed impairment" that it met or equaled at the time of the CPD. (20 CFR 416.994a(b)(2)). . . . If the CPD impairment(s) does not meet or equal the severity of that listing, we proceed to step 3.
>
> 3. At step 3, we determine whether the child is currently disabled, considering all current impairments. (20 CFR 416.994a(b)(3)) We determine if the child's current impairment(s) is severe, as defined in 20 CFR 416.924(c). If the impairment(s) is not severe, we find that the child's disability has ended. If the impairment(s) is severe, we consider whether it meets or medically equals a listing. (20 CFR 416.924(d), 416.925, 416.926). . . .

(SSR 05-03p).

Finally, substantial evidence must support the Social Security Administration's decision to terminate benefits. *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982). *See also Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) ( "Because of the presumptive validity of [the prior disability] decision, there can be no termination of SSI benefits until there is substantial evidence of actual improvement to the point of no disability." ). The law of this circuit is well established.

> In *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1984), this court held that there could be no termination of disability benefits unless there was substantial evidence of improvement to the point of no disability. This court has subsequently determined that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).

*Lawrence v. Heckler*, 739 F.2d 567, 568 (11th Cir. 1984); *Adams v. Heckler*, 742 F.2d 1321, 1322 (11th Cir. 1984); *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984); *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985). Thus, the court must determine whether

6

substantial evidence supports the ALJ's decision that A.S.J. had medically improved to the point of no disability. *See Vaughn*, 727 F.2d at 1043.

### III.  ADMINISTRATIVE PROCEEDINGS

A.S.J. was born on February 7, 1996. (R. 214). On March 24, 1998, A.S.J. underwent a consultative evaluation at the Monsky Developmental Clinic. He was chronologically 2 years and 2 months old at the time of the evaluation. (R. 197). A.S.J. was subjected to a battery of tests including the Vineland Adaptive Behavior Scales, Bayley Scales of Infant Development for cognition, language, and psychomotor development and the Carolina Curriculum for Infants and Toddlers. (*Id.*). Significant delays were suspected as a result of the testing. (R. 199). For example, the Vineland Adaptive Behavior Scales demonstrated that A.S.J. suffered from a 31% developmental delay in his socialization skills. (R. 197). The results of the Bayley Scales indicated a 54% developmental delay in cognitive skills, a 42% delay in language skills, and a less than 25% delay in motor skills. (*Id*.) Finally, the Carolina Curriculum for Infants and Toddlers with Special Needs indicated a 19% developmental delay in adaptive functioning. (*Id*.) A.S.J. was diagnosed as suffering from "[s]peech and developmental delays - Mixed Developmental Disorder." (*Id*.) It was on this basis that A.S.J. originally was found disabled. A.S.J.'s mother alleges that A.S.J. remains disabled due to slow learning and speech problem. (R. 91).

An administrative hearing was held on August 18, 2004. (R. 211). A.S.J. was 8 years old at the time of the hearing. (R. 214). He was in the second grade, after repeating the first

grade. (R. 214-215). His speech was such that some of his words were clear while others were not. (R. 215). Following the administrative hearing, the ALJ found that A.S.J. has a severe impairment of borderline intellectual functioning. (R. 29). The ALJ also found that A.S.J. has experienced medical improvement since the prior favorable decision and that his impairments do not meet or medically equal any listed impairment. (R. 29-30). The ALJ concluded that A.S.J.'s impairments, when considered singly or in combination, did not meet or medically equal in severity the criteria for any impairment listed at 20 CFR, part 404, Subpart P, Appendix 1. (R. 30). Accordingly, the ALJ determined that A.S.J. is not disabled. (*Id*.)

## IV. ISSUES

The plaintiff presents two issues for the Court's review. As stated by the plaintiff, the issues are as follows:

1. The Commissioner failed to properly consider the treating physician's opinion.

2. The Commissioner failed to properly consider Listing 112.05D of the Regulations.

(Mem. of Law in Supp. of Pl's Argument at 3).

## V. DISCUSSION

At the first step in the analysis, the ALJ concluded that

there had been a decrease in medical severity based on more than minor changes in symptoms, signs, or laboratory findings associated with the claimant's impairments present at the time of the most recent favorable decision. Thus, I find that medical improvement has occurred.

(R. 29). Next, at step two, the ALJ concluded that although A.S.J. previously met Listing 112.02,

> [t]his listing requires specific signs, symptoms and laboratory findings that are not demonstrated by the current record, and no treating or examining source or medical expert has concluded otherwise.  The evidence demonstrates the claimant has intellectual and adaptive functioning at the borderline intellectual functioning level.  Thus, the disability analysis continues.

(R. 29).

Finally, at step three, the ALJ found that A.S.J. "has "severe" impairments, including borderline intellectual functioning." (*Id*.) However, the ALJ concluded that A.S.J.'s impairments "do not result in "marked and severe" functional limitations." (R. 32). Thus, the ALJ concluded that A.S.J. is not disabled. (*Id*.) Because the ALJ did not perform the appropriate analysis, the court concludes that the ALJ erred as a matter of law.

**A.  Step One – Medical Improvement at Comparison Point Decision (CPD)**.

A.S.J. originally was found disabled due to developmental delays and organic mental disorders. (R. 38). Relying on a March 24, 1998, evaluation conducted at the Monsky Developmental Clinic, the Commissioner determined that A.S.J. was significantly delayed in cognitive and language development and his adaptive skills were also delayed. (R. 199-200). At step one, the ALJ was required to demonstrate, by a comparison of new medical evidence with the medical evidence on which A.S.J. was initially found disabled, that his medical condition had improved sufficiently to the point of no disability. *Vaughn,* 727 F.2d at 1043. However, the ALJ did not compare evidence of A.S.J.'s developmental delays;

instead the ALJ relied on current IQ scores to conclude that A.S.J. is no longer disabled. Because the ALJ failed to do the appropriate comparison, the court concludes that the ALJ erred as a matter of law.

On January 30, 2003, A.S.J. underwent a consultative examination by Dr. Marnie Smith Dillon, a licensed clinical psychologist. (R. 162-165). During the evaluation, Dr. Dillon noted that A.S.J. earned a full scale IQ score of 72 on the Wechesler Intelligence Scale for Children - Third Edition ("WISC-III") test. (R. 163). Based on this score, Dr. Dillon opined that A.S.J. has borderline intellectual functioning. (*Id*.) Although she noted that A.S.J.'s remote memory, insight, judgment and decision-making skills were impaired, (R. 164), she concluded that his "ability to function in an age-appropriate manner cognitively, communicatively, socially, adaptively, behaviorally, and in concentration, persistence, and pace is mildly impaired." (R. 165).

On August 26, 2003, A.S.J. underwent a consultative examination at the Monsky Developmental Clinic. (R. 192-196). A.S.J. was 7 years, 6 months old at the time of this testing. He was administered the Stanford-Binet Intelligence Scale - Fifth Edition ("SBIS5"). He obtained a full scale IQ score of 64, a verbal IQ score of 63 and a non-verbal IQ score of 69. (R. 193). These scores were all within the delayed range. (*Id*.) In addition, A.S.J.'s fluid reasoning was delayed and his knowledge, quantitative reasoning, visual-spatial processing, and working memory were within the borderline delayed range. (*Id*.) A.S.J. "demonstrated significantly weaker inductive and deductive reasoning skills," and these

skills were delayed.  (*Id*.)  A.S.J.'s ability to solve novel figural problems, and identify sequences in objects, figures, or patterns was also delayed.  (*Id*.)

The Mini Battery of Achievement ("MBA") was also administered to A.S.J. (R. 194). The MBA measures functioning in academic areas.  All of A.S.J.'s academic skills were delayed.  His basic skills were comparable to a 5 year, 5 month old child; his reading skills were comparable to a 5 year, 10 month old child; his writing skills were comparable to a 5 year, 7 month old child; his mathematics skills were comparable to a 5 year, 6 month old child; and his factual knowledge was comparable to a 4 year, 6 month old child.[3]  (*Id*.)

A.S.J.'s adaptive behavior was measured by the Scales of Independent Behavior-Revised ("SIB-R") form.  (R. 194).  The form measures "four different areas of adaptive functioning: motor skills, social interaction and communication skills, personal living skills, and community living skills."  (*Id*.)  The results of this assessment concluded that A.S.J. was functioning at a level comparable to a 3 year, 10 month old child.  (*Id*.)  His "functional independence" was deemed limited.  (R. 195).  The assessment team[4] concluded that A.S.J. is suffering from mild mental retardation.  (*Id*.)

On May 10, 2004, A.S.J. underwent a third consultative examination at the request of the Commissioner.  (R. 201-204).  Dr. Glen King, a diplomate in clinical psychology,

---

[3] According to the court's calculations, these scores represent the following delays: 27.8% delay in basic skills, 22.2% delay in reading, 25.6% delay in writing, 26.7% delay in mathematics, and 40% delay in factual knowledge.

[4] The assessment team included Clinic Director Renate Rommel, licensed clinical psychologist Dr. Curry Hammack, child assessment specialists Sarah Struby and Beverly Enloe, and certified school psychometrist Cynthia Mantione. (R. 196).

performed the evaluation. (*Id*.). A.S.J. was 8 years old and in the first grade at the time of the evaluation. (R. 202). His thoughts were "retarded in progress and form and affect appropriate." (*Id*.) "He was disoriented as to person, place, and time for a child of this age." (*Id*.) On the WISC-III, A.S.J. scored a "Verbal IQ of 63, a Performance IQ of 80, and a Full Scale IQ of 69, placing him in the mild range of mental retardation at the present time relative to his same age peers." (R. 203). Dr. King went on to say

> His task performance was quite inconsistent with extreme deficits in the areas of abstract reasoning and arithmetic as well as comprehension of social situations. There was a significant discrepancy between his Verbal IQ and Performance IQ with the Verbal IQ score being 17 points lower. His abilities really appear to be more into the borderline range of intellectual functioning. There was no evidence on any of the test results to suggest the presence of focal organic pathology or malingering. The results of achievement testing show that this individual is currently reading and spelling on a 1st grade level and doing arithmetic on a kindergarten level. His standard scores for reading, spelling, and arithmetic are 72, 84, and 54 respectively. He appears to be functioning at grade level with regard to reading and spelling, but he is well behind with regard to arithmetic, indicating the presence of some concentration difficulties or failure to profit from educational opportunities. This is not evidence for learning disabilities as learning disability diagnosis requires the presence of at least average intelligence.

(R. 203).

Dr. King concluded that A.S.J. is not suffering from an "inability to profit from normal life experiences." (R. 204). He concluded that A.S.J. "is certainly educable and will require special attention in order to obtain literacy skills and matriculate through the classroom levels. He will work at a slower pace than his same age peers but should be able to simulate educational information." (*Id*.). Dr. King diagnosed A.S.J. as suffering from

mild mental retardation. (R. 203).

At the administrative hearing, licensed clinical psychological Dr. Nancy Sack testified as a medical expert. (R. 229-232). After considering A.S.J.'s different IQ scores, Dr. Sack relied on his highest IQ score to conclude that A.S.J.'s I.Q. is "in the borderline range." (R. 231). "Generally, we take the highest score that a person has as an indication of their IQ score because a person is not capable of getting a score higher than they can perform, bu they are capable of getting scores lower than their ability level." (R. 231). Dr. Sack also rejected Dr. King's diagnosis of mild mental retardation because Dr. King "doesn't really take into consideration adaptive functioning when he gives the diagnosis of mentally retarded." (*Id*.) Finally, relying on Dr. Dillon's assessment, she concluded that A.S.J.

> would not meet or equal any of the listings and he has shown improvement certainly from 1998, when he was initially put on disability, where he had to show – test results showing a lot of developmental delay to, in 1903 [sic] getting IQ scores in the borderline range. In 1904 [sic], getting some scores in mentally retarded range, but overall, assessed that his abilities were really in the borderline range. Therefore, he has shown some improvement.

(R. 231-232).

After reciting the evidence, the ALJ concluded that "this evidence establishes that there has been a decrease in medical severity based on more than minor changes in symptoms, signs, or laboratory findings associated with the claimant's impairments present at the time of the most recent favorable decision. Thus, I find that medical improvement has occurred." (R. 29). The court concludes that substantial evidence does not support this finding. Although the ALJ references the medical evidence, the ALJ does not sufficiently

13

specify upon which evidence he is relying to conclude that medical improvement has occurred. Instead, the ALJ relied on IQ scores to conclude that A.S.J. no longer meets Listing 112.02. In this circuit, the law is clear that the Listings for mental retardation do not require the Commissioner to make a finding of mental retardation based upon the results of an I.Q. test alone. *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986). However, the test results must be considered in context with other evidence including the daily activities and behavior of the claimant. *Id.* at 1499. Consequently, the ALJ must review the test results in conjunction with the other evidence in the record which, in this case, he failed to do. It was not sufficient to merely compare A.S.J.'s I.Q. scores; the ALJ was required to consider whether A.S.J. continues to suffer from developmental delays. The Commissioner was required to compare the plaintiff's condition in 1998 to his condition in 2003 to determine whether his medical condition had improved. The Commissioner found that, in 1998, A.S.J. medically equaled Listing 112.02 A, B, and D due to developmental delays. (R. 157). The evidence *suggest[s] 18 month delay."* (*Id.*) (emphasis added). Accordingly, the ALJ should have, at a minimum, compared the A.S.J.'s developmental delays in 1998 with his developmental delays in 2003 before terminating his benefits. Because the ALJ failed to do the comparison of A.S.J's current developmental progress with his prior developmental delays, the court concludes that the ALJ erred as a matter of law at step one.[5] *See McAulay*,

---

[5] The ALJ perfunctorily recites the plaintiff's diagnoses and then describes the plaintiff's current condition as found by the ALJ based on his review of the current medical evidence. At best, the court would be required to infer the necessary comparison because the ALJ does not make the comparison of the medical evidence then and now. The comparison of the evidence is a job for the Commissioner, not this court.

749 F.2d at 1500; *Freeman*, 739 F.2d at 565.

The ALJ then compounded his error at step two by failing to consider whether A.S.J. meets or functionally equals Listing 112.05. Although the ALJ had before him several valid IQ scores, without reference to any particular section, the ALJ concluded that the plaintiff's impairments did not meet or equal in severity any impairment in the Listings of Impairments, 20 C.F.R. Pt. 404, App. 1. Listing 112.05 provides, in pertinent part, that a claimant is disabled if he meets the following criteria:

> § 112.05 *Mental Retardation* Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E or F are satisfied.

Sections D and E then require valid verbal performance or full scale IQ scores of 60 to 70 as well as marked limitations in areas or age-appropriate functioning. In this case, A.S.J. has the following valid IQ scores.

| IQ SCORES | Dillon - 1/30/03 WISC-III | Monsky - 8/26/03 SBIS-5 | King - 5/10/04 WISC-III |
|---|---|---|---|
| Verbal | 72 | 63 | 63 |
| Performance | 77 | 69 | 80 |
| Full | 72 | 64 | 69 |

Five of A.S.J.'s valid IQ scores fell between 60 and 70. However, the ALJ did not

15

consider whether A.S.J. meets the requirements of Listing 112.05.[6] While the ALJ has some discretion in accepting other evidence to determine the validity of test scores, the ALJ may not reject a valid score. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Consequently, at step two of the analysis, the ALJ should have considered whether A.S.J. meets or equals Listing 112.05.[7]

### V. Conclusion

Accordingly, for the reasons as stated, and for good cause, the court concludes that the Commissioner's determination is due to be REVERSED and REMANDED for further proceedings.

A separate order will issue.

Done this 18th day of July, 2006.

      /s/Charles S. Coody
      CHARLES S. COODY
      CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6] The Commissioner argues that if the ALJ had considered this Listing, he would have concluded that the plaintiff did not meet its requirements. This, of course, is pure speculation. The ALJ did not specifically analyze any Listing. Instead, the ALJ, after noting that no treating source or medical expert had concluded that the plaintiff met any Listing, stated merely that he had "reviewed the record and . . . [found]that the evidence . . . [did]not support such a conclusion." (R. 30) This type of conclusory approach does not provide an adequate explanation sufficient to allow the court to fulfill its duty to review the Commissioner's decision regardless of how limited that review may be.

[7] Because the ALJ erred as a matter of law at steps one and two of the analysis, the court pretermits discussion of step three of the analysis.